UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.  Case No.  6:22-cr-132-PGB-LHP
                6:22-cr-133-PGB-LHP

NACOE RAY BROWN
_____/

## SENTENCING MEMORANDUM

Nacoe Brown, through his undersigned counsel, respectfully moves this Honorable Court for the imposition of a sentence that does not exceed his sentencing guidelines as to his new law violation (6:22-cr-133-PGB-LHP), and a concurrent sentence as to his violation of supervised release (6:22-cr-132-PGB-LHP) that is based solely on the same conduct. Under the specific facts and circumstances of these two cases, and Mr. Brown's history and characteristics, such a sentencing structure would be sufficient but not greater than necessary to comply with the purposes of sentencing. As grounds in support thereof, Mr. Brown states the following:

  I.  **The offense conduct giving rise to both above-styled cases involves a single Count of bank robbery.**

Mr. Brown's offense conduct is accurately captured in the Presentence Investigation Report (PSR). Doc. 49. In summary, on June 28, 2022, Mr. Brown entered the McCoy Federal Credit Union bank in Belle Isle, Florida, produced

a demand note to the teller, and then left the bank on foot with $4,296 in stolen cash. PSR, ¶¶ 5–7. Mr. Brown then went to a gas station across the street from the bank, changed clothing in a restroom, and then went back to an adjacent hotel to retrieve his belongings. Law enforcement officers quickly responded to the scene and apprehended Mr. Brown within the adjacent hotel. During his arrest, Mr. Brown admitted to being the person who robbed the credit union bank. PSR, ¶¶ 8–13. Although Mr. Brown's demand note included the words "I have a gun," it should be noted that Mr. Brown did not possess or brandish any real or prop weapons during the robbery. PSR, ¶ 7.

## II. Mr. Brown accepted responsibility for his conduct and consistently demonstrated a cooperative attitude in the prosecution of this case.

Mr. Brown admitted to the law enforcement officers effectuating his arrest that he robbed the bank. PSR, ¶ 13. There is no information indicating that Mr. Brown impeded or obstructed justice. PSR, ¶ 15. On January 4, 2023, Mr. Brown appeared before the Court and pleaded guilty to Count One of the Indictment without a Plea Agreement. PSR, ¶ 4. Mr. Brown has clearly demonstrated acceptance of responsibility for the offense. PSR, ¶ 26. Mr. Brown also assisted authorities in the investigation and prosecution of his own misconduct with the timely notification of his intent to plead guilty. PSR, ¶ 27.

> **III. Mr. Brown's sentencing guidelines, in combination with his personal characteristics, warrant the Court's consideration of the sentencing structure requested herein.**
>
> > **a. Mr. Brown's applicable sentencing guidelines for his new law violation case, bank robbery (6:22-cr-133-PGB-LHP).**

Based upon a total offense level of 21 and a criminal history category of IV, the guideline imprisonment range is 57 months to 71 months. PSR, ¶ 76. The guideline range for a term of supervised release is 1 year to 3 years. PSR, ¶ 79.

> > **b. Mr. Brown's applicable sentencing guidelines for his VOSR case (6:22-cr-133-PGB-LHP) and the support for his request of a concurrent sentence.**

Mr. Brown's sentencing guidelines for his violation of supervised release (VOSR) include 33–36 months imprisonment.[1]

The instant VOSR case before the Court originated in the District of Maryland, in 2001. PSR, ¶ 38. On September 2, 2022, following Mr. Brown's arrest for the June 28, 2022, bank robbery in Belle Isle, Florida, the Maryland court transferred jurisdiction of the VOSR case to this Court. Pursuant to the Superseding Petition for Offender Under Supervised Release, the sole violation charged was the 2022 bank robbery in Belle Isle, Florida. Doc. 24. This Court subsequently consolidated the two above-styled cases for sentencing.

---

[1] Although the promulgated guideline range is 33–41 months, the maximum statutory penalty is 36 months. Therefore, the guideline range becomes 33–36 months.

Mr. Brown is cognizant of the Sentencing Commission's position regarding the imposition of a term of imprisonment and that "the sanction imposed upon revocation is to be served consecutively to any other term of imprisonment imposed for any criminal conduct that is the basis of the revocation."[2] However, "under 18 U.S.C. § 3584, the court, upon consideration of the factors set forth in 18 U.S.C. § 3553(a), including applicable guidelines and policy statements issued by the Sentencing Commission, may order a term of imprisonment to be served consecutively or concurrently to an undischarged term of imprisonment."[3]

In anticipation of sentencing in the instant cases, Mr. Brown contemplated seeking a substantial continuance of sentencing with this Court because of his outstanding Motion to Vacate, Set Aside or Correct Sentence ("Motion to Vacate Sentence"), that is presently pending in the District of Maryland. But because of the unknown duration and often prolonged nature of such motion practice, Mr. Brown opted to proceed with sentencing before this Court.[4]

---

[2] *See* USSG, Ch. 7 Pt. B, Introductory Commentary.
[3] *Id.*
[4] On February 9, 2023, the Maryland court entered an Order requiring the Government to respond within 60 days of the said Order and permitting Mr. Brown to file a Reply within 28 days following the Government's Response. Case number 1:01-cr-00377-ELH (Related Civil Action: ELH-23-352) at docket entry 199.

To provide some brief context regarding Mr. Brown's pending Motion to Vacate Sentence, Mr. Brown's former attorney on his 2001 robbery case in the District of Maryland, Kenneth Ravenell, was recently convicted at jury trial for conspiracy to commit money laundering. According to the U.S. Attorney's Office, Mr. Ravenell "used his law firm escrow account to launder drug proceeds." App. F–3. The U.S. District Court for the Eastern District of Virginia sentenced Mr. Ravenell to 57 months imprisonment.

> **THE UNITED STATES ATTORNEY'S OFFICE**
> **DISTRICT of MARYLAND**
>
> U.S. Attorneys » District of Maryland » News
>
> **Department of Justice**
> U.S. Attorney's Office
> District of Maryland
>
> FOR IMMEDIATE RELEASE                    Wednesday, June 22, 2022
>
> **Baltimore Defense Attorney Sentenced to 57 Months in Federal Prison for Money Laundering Conspiracy**
>
> The Defendant Used His Law Firm Escrow Account to Launder Drug Proceeds
>
> **Baltimore**, Maryland – U.S. District Judge Liam O'Grady of the U.S. District Court for the Eastern District of Virginia, who presided over this case in the District of Maryland, today sentenced Kenneth Wendell Ravenell, age 63, of Monkton, Maryland, to 57 months in federal prison, followed by three years of supervised release for conspiracy to commit money laundering conspiracy charge. Ravenell was convicted of that charge on December 28, 2021, after a 16-day trial.

*Id.*

Mr. Ravenell's 2022 conviction may appear to be unrelated to Mr. Brown's present circumstances. However, during Mr. Brown's jury trial for his 2001 robbery case, federal authorities discovered that more than $36,000 in cash, key evidence in Mr. Brown's trial, had disappeared. App. F–1. Of further complication and concern, the federal prosecutor and legal adversary to Mr. Ravenell, Mr. Jonathan Luna, was found dead with multiple stab wounds less than one year later. App. F–2. As a result, Mr. Brown has voiced his concerns regarding his former attorney's improprieties as potentially dating back to when Mr. Ravenell represented Mr. Brown at trial in his 2001 robbery case.

The New York Times | https://www.nytimes.com/2003/12/05/us/federal-prosecutor-found-dead-with-stab-wounds.html

## Federal Prosecutor Found Dead With Stab Wounds

By Eric Lichtblau
Dec. 5, 2003

A federal prosecutor in Baltimore was found dead with multiple stab wounds on Thursday in a creek in a rural area of Pennsylvania, hours before he was scheduled to appear in court in the case of a violent drug ring.

The prosecutor, Jonathan P. Luna, was stabbed repeatedly, and an autopsy showed signs of freshwater drowning, Dr. Barry Walp, the coroner for Lancaster County in eastern Pennsylvania, said in an interview.

*Id.*

Due to the unpredictable nature of how Mr. Brown's Motion to Vacate Sentence will ultimately resolve, and his willingness to proceed to sentencing

6

before this Court without seeking a substantial delay, Mr. Brown seeks this Court's consideration of a concurrent sentence for his VOSR case to his instant bank robbery case, so that he is not excessively punished if he succeeds in vacating the prior sentence for which he was placed on the term of supervised release that is now before this Court.

## IV. Mr. Brown's personal history and characteristics extend beyond his criminal history.

Mr. Brown understands that his criminal history will likely be a significant factor in this Court's consideration of an appropriate sentence. However, Mr. Brown's unique history and characteristics (18 U.S.C. § 3553(a) factors) provide additional insight into his life circumstances and the correlation to unlawful conduct. Such circumstances include, for example: entering the criminal justice system at the age of 16 years old and being charged and sentenced to incarceration as an adult; a history of abuse and trauma; and a more recent diagnosis pertaining to his mental health – all of which have likely contributed to his prior and instant criminal convictions.[5] Consequently, this Court is equipped with a broad array of information with which to utilize in determining an appropriate sentence.

---

[5] The intimate details surrounding these subject matters are intentionally omitted from further discussion within this Sentencing Memorandum by undersigned counsel, as such matters are provided for the Court's consideration within the PSR.

## V. Additional mitigation materials for the Court's consideration.

Mr. Brown submits for this Court's consideration additional mitigation materials in the included Appendix.

### a. Forensic Psychological Evaluation by Dr. Tiesha Nelson.

In preparation for sentencing, undersigned counsel retained the services of Dr. Tiesha Nelson, Psy.D., Licensed Clinical Psychologist, to evaluate Mr. Brown and report on her professional conclusions. Dr. Nelson's written Forensic Psychological Evaluation, dated March 28, 2023, is provided for the Court. Notably, Dr. Nelson provides a diagnostic impression that has not previously been addressed with Mr. Brown, either within or outside of the criminal justice system. App. A, PSR pp. 23–29.

Additionally, Mr. Brown regrets that he was not afforded early and effective mental health intervention and believes that such intervention – to address his risk factors contributing to criminal behaviors – would have resulted in the avoidance of his latter criminal convictions and the instant cases before the Court. Mr. Brown's perspective on this matter is supported by Dr. Nelson's findings. *Id.*

### b. Letters of support.

Several individuals have submitted letters of support for the Court's consideration. App. B. These letters address Mr. Brown's character beyond the confines of a criminal history report.

Two submissions are particularly unique insofar as they originate from Mr. Ryan Carroll, Mr. Brown's "cell mate" at the Orange County Jail (where Mr. Brown has been detained throughout the pendency of the instant cases), and Mr. Carroll's mother, Ms. Patti Carroll. As Mr. Carroll explains, he was experiencing feelings of hopeless, depression and suicidal ideation. Mr. Carroll directly credits Mr. Brown's mentorship for "saving his life" through their conversations together within the jail. App. B–4.

Ms. Carroll also credits Mr. Brown for the significant and positive change in her son's demeanor while incarcerated at the jail. As Ms. Carroll explains, her son "had been in a suicidal, depressed, hateful unforgiving state of mind," and then dramatically improved because of the mentorship that Mr. Brown provided. Ms. Carroll describes Mr. Brown's arrival and intervention in her son's life as a "miracle." App. B–5.

### c. Accomplishments.

Mr. Brown's passion for writing and producing creative and inspirational works of literature and art are provided for the Court. App. C.

### d. Publications authored by Mr. Brown.

Images of the front and rear covers of numerous books authored by Mr. Brown are provided for the Court. App. D.

### e. The death of Mr. Brown's mother, father, and sister.

In addition to the articulable trauma that Mr. Brown has experienced throughout his life, as provided in his PSR, his mother, father, and sister each passed away while Mr. Brown was incarcerated. The respective obituaries for those deceased family members are provided for the Court. App. E

### f. News media information pertaining to Mr. Brown's 2001 robbery case and his former attorney's federal conviction.

During Mr. Brown's 2001 robbery case trial, a sum of cash was presented by the prosecution as key evidence against Mr. Brown. After the jury returned its verdict against Mr. Brown, approximately $36,000–$38,000 of that cash/evidence went missing. Mr. Brown's case proceeded to sentencing without any investigative resolution as to the missing cash/evidence. App. F–1. Less than one year later, the federal prosecutor involved in the 2001 robbery case trial was found deceased in an apparent violent homicide. App. F–2. In 2022, Mr. Ravenell, the lawyer who had represented Mr. Brown in the 2001 robbery case trial, was convicted at his own trial for money laundering drug proceeds and sentenced to nearly 5 years in federal prison.

10

According to the Department of Justice's press release, the trial evidence demonstrated that Mr. Ravenell "gave a drug dealer [his client] advice on how to launder the millions of dollars of cash that the dealer's marijuana sales generated" between "2009 through 2014," "personally laundered his client's drug proceeds using the firm's attorney trust account" and "set up businesses that generated cash themselves." App. F–3. In culmination, these questionable circumstances give rise to Mr. Brown's concerns regarding the integrity of his 2001 trial and legal representation.

## VI. Mr. Brown's present insight into his need for rehabilitation.

Mr. Brown avers that he has gleaned insight into his present circumstances and the nexus between his mental health and his decisions to engage in unlawful conduct. Mr. Brown also offers that, upon introspection, he feels a sense of having been "institutionalized" by virtue of his significant terms of incarceration throughout his life. Mr. Brown hopes that the sentence imposed by the Court will be structured as to accommodate effective rehabilitation to address his mental health diagnosis and compound trauma.

## CONCLUSION

Mr. Brown respectfully moves this Honorable Court for the imposition of a sentence that does not exceed his sentencing guidelines as to his new law violation (6:22-cr-133-PGB-LHP), and a concurrent sentence as to his violation

of supervised release (6:22-cr-132-PGB-LHP) that is based solely on the same conduct.[6]

Respectfully submitted,

A. FITZGERALD HALL, ESQ.
FEDERAL DEFENDER

*/s/Joshua R. Lukman*
Joshua R. Lukman, Esq.
Assistant Federal Defender
Florida Bar Number: 0088213
201 South Orange Avenue, Ste 300
Orlando, Florida 32801
Telephone: 407-648-6338
Fax: 407-648-6765
E-Mail: joshua_lukman@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the undersigned attorney filed the foregoing Sentencing Memorandum with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to Michael Felicetta, Esq., Assistant United States Attorney, this 29th day of March 2023.

*/s/Joshua R. Lukman*
Joshua R. Lukman

---

[6] Due to the combined page length of the instant Sentencing Memorandum and Appendix, a courtesy printed copy will be provided for the Court immediately following the electronic CM/ECF filing.